# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF OHIO
# EASTERN DIVISION

| | |
|---|---|
| YAZMIN CHAMORRO<br>4728 Springwood Drive<br>Cleveland, Ohio 44144,<br><br>**Plaintiff**,<br><br>  v.<br><br>BOSTON MARKET CORPORATION<br>14103 Denver West Parkway<br>Golden, Colorado 80401,<br><br>  and<br><br>MATTHEW KINDER<br>1446 Graber Drive<br>Lakewood, Ohio 44107,<br><br>  and<br><br>ALEX SANDERS<br>11213 Saint Mark Avenue<br>Cleveland, Ohio 44111,<br><br>**Defendants**. | CASE NO.<br><br>JUDGE<br><br><br>**COMPLAINT WITH JURY DEMAND** |

## INTRODUCTION

1. Plaintiff Yazmin Chamorro brings this civil action to redress sexual harassment that she was subjected to by her manager while working at the Boston Market restaurant in Brooklyn, Ohio.

2. Boston Market's management had received reports that the store manager, Defendant Matthew Kinder, was acting inappropriately toward other young female employees, but no corrective action was taken in response to the reports of sexual harassment.

3. Boston Market's inaction left Ms. Chamorro, then 16 years old, exposed to Mr. Kinder's sexually harassing behavior — including unwanted, inappropriate touching — which ultimately forced her out of her job.

## PARTIES

4. Plaintiff Yazmin Chamorro is a resident of Cleveland, Ohio.

5. During 2021 and 2022, Plaintiff was an employee of Defendant Boston Market Corporation.

6. During all times relevant to this action, Defendant Boston Market Corporation ("Boston Market") was a foreign for-profit corporation registered with the State of Ohio[1] and doing business within the state.

7. During all times relevant to this action, Defendant Matthew Kinder was the general manager of Boston Market's restaurant in Brooklyn, Ohio, where Plaintiff Chamorro worked.

8. During Plaintiff's employment at Boston Market, Defendant Kinder was her manager and supervisor.

9. During Plaintiff's employment at Boston Market, Defendant Alex Sanders was the area manager covering Boston Market's restaurant in Brooklyn, Ohio. At all relevant times, he was the manager of Defendant Kinder.

## JURISDICTION & VENUE

10. Jurisdiction over federal claims under Title VII of the Civil Rights Act of 1964 is asserted under 28 U.S.C. §§ 1331 and 1343(a)(4).

11. The Court has jurisdiction over state-law claims under 28 U.S.C. § 1367.

12. The Court has jurisdiction over the parties under 28 U.S.C. § 1391, and venue is proper here because the events at issue took place in this jurisdiction.

---

[1] After the events underlying the claims in this civil action, Defendant Boston Market's corporate registration was cancelled due to its failure to maintain a statutory agent.

**FACTS**

**Yazmin Chamorro, a 15-year-old high school student, gets her first job at a restaurant and establishes herself as a reliable employee.**

13. In December 2021, Plaintiff Yazmin Chamorro applied for a job at the Boston Market restaurant near her home in Brooklyn, Ohio.

14. In December 2021, Plaintiff Chamorro was 15 years old.

15. Plaintiff Chamorro worked as a cashier and server for Boston Market from December 2021 to September 11, 2022.

16. Plaintiff had hoped to continue working at Boston Market through the end of high school.

17. Plaintiff was a good, reliable employee who worked hard in her job.

18. During her employment with Boston Market, Plaintiff Chamorro did not receive any workplace discipline or other warnings about her job performance.

**The new manager of the restaurant, Matthew Kinder, acts inappropriately toward young female employees, who report the behavior to Boston Market's management.**

19. In or around early September 2022, Defendant Boston Market hired Defendant Matthew Kinder to be the general manager at the Boston Market in Brooklyn.

20. At the time of his hiring, Mr. Kinder was in his early 40s.

21. In September 2022, Plaintiff Chamorro was 16 years old.

22. During the first week of September, Defendant Kinder started working at Boston Market as the general manager of the Brooklyn restaurant.

23. As the Brooklyn restaurant's general manager, Defendant Kinder supervised and managed all the employees at the restaurant, including Plaintiff Chamorro.

24. In his first two weeks at Boston Market, Defendant Kinder on multiple occasions engaged in unwelcome sexually harassing behavior toward young female employees at the restaurant.

25. During Defendant Kinder's first week at Boston Market, Plaintiff Chamorro observed him rubbing his crotch while looking at the buttocks of a female employee.

26. Plaintiff Chamorro reported the incident to a supervisor, Emily Villard, and said that Mr. Kinder's behavior made her uncomfortable.

27. Ms. Villard then reported the issue up to Boston Market's area manager, Alex Sanders.

28. Mr. Sanders was Mr. Kinder's manager at Boston Market.

29. Upon information and belief, Mr. Sanders participated in and supported the decision to hire Mr. Kinder at Boston Market.

30. Before Mr. Kinder was hired to work at Boston Market, Sanders and Kinder were familiar and friends with each other through a previous job.

31. During another shift, Defendant Kinder stood unreasonably close to Ms. Chamorro in the back of the restaurant several times.

32. The back of the restaurant was large enough that employees never had to stand that close to a co-worker. Defendant Kinder's behavior was unusual and made Ms. Chamorro uncomfortable as it appeared to be a sexual overture from her manager.

33. She responded by walking away to an area where other people were present.

34. On another day, Ms. Chamorro and several other young female employees — nearly all of them minors — were gathered in the restaurant's office waiting to clock in.

35. Defendant Kinder walked into the doorway, blocking it, and said that the employees were "really pretty women."

36. The female employees, including Ms. Chamorro, felt uncomfortable about the comment and reported it to Mr. Sanders.

37. The employees explained to Mr. Sanders that they were afraid to work with Mr. Kinder.

38. Rather than taking the female employees' reports seriously or investigating the issues, Mr. Sanders responded that the female employees were overreacting and making unfair assumptions about Mr. Kinder.

39. Upon information and belief, Boston Market's management received other reports that Defendant Kinder had acted inappropriately toward female employees.

40. Defendant Boston Market failed to take reasonable corrective action in response to reports concerning Defendant Kinder's behavior toward subordinate female employees.

**Days after Boston Market's area manager disregarded employees' reports of harassment, Mr. Kinder swipes his hand along Ms. Chamorro's buttocks.**

41. On September 11, 2022, around 5:30 pm, Mr. Kinder and Ms. Chamorro were working together in the front of the restaurant. Mr. Kinder was serving food, and Ms. Chamorro worked on the register.

42. While Ms. Chamorro regularly put the food in bags for customers, Mr. Kinder decided to bend down behind Ms. Chamorro to grab a food bag.

43. As he grabbed the bag, Mr. Kinder touched Ms. Chamorro's buttocks with the palm of his right hand and continued to swipe his hand against her buttocks.

44. No other Boston Market employees were in the front of the restaurant when Mr. Kinder made this physical contact.

45. Due to the nature of contact, it was apparent to Ms. Chamorro that the touching was intentional and that Mr. Kinder had done it in a manner to avoid detection by other employees.

46. Immediately after the touching occurred, Plaintiff Chamorro walked to the back of the store.

47. Other female employees saw that Ms. Chamorro felt uncomfortable and consoled her. Ms. Chamorro told a supervisor, Emily Villard, what had occurred.

48. Ms. Villard reported the incident to the Brooklyn Police Department, which dispatched police officers to the restaurant.

49. Ms. Chamorro was deeply unsettled by the inappropriate touching by her manager and the fact that he was attempting to act as though it had not occurred.

50. Knowing she could no longer tolerate working under Mr. Kinder, Ms. Chamorro gathered her belongings and told Mr. Kinder that she was not returning to work at Boston Market.

**Even after its manager inappropriately touched a minor, Boston Market continues to disregard its female employees' reports of harassment.**

51. When police officers arrived at the restaurant, they spoke with Boston Market employees and gathered written statements.

52. After police officers arrived at the restaurant, Mr. Sanders also arrived at the restaurant.

53. In his interactions with police officers, Mr. Sanders sought to protect Boston Market's and his interests by downplaying the incident and vouching for Mr. Kinder, the restaurant manager that Boston Market had just hired.

54. Without mentioning details, Mr. Sanders did acknowledge to police that he was aware that female employees at the restaurant had concerns about working with Mr. Kinder.

55. However, in their statements to police officers, Mr. Sanders and Mr. Kinder both dismissed the female employees' concerns and claimed that their complaints were motivated by the fact that Mr. Kinder had expected the female employees to work.

56. When Mr. Kinder and Mr. Sanders saw each other in the restaurant, they greeted each other and Sanders — before seeing the surveillance video of the incident — told Kinder "you're good."

57. With officers present, Mr. Sanders pulled up the restaurant's surveillance footage of the incident. After watching the video, Sanders acknowledged that Kinder had touched Ms. Chamorro's buttocks, but he asserted that it was not intentional.

58. Mr. Sanders's attention was focused only on defending Mr. Kinder instead of objectively evaluating the incident or consoling a female minor employee who reported that she was inappropriately touched.

59. At no time did Mr. Sanders, Mr. Kinder, or any other manager at Boston Market apologize to Ms. Chamorro for the inappropriate touching.

60. As a result of the sexually harassing work environment that existed at the Boston Market under Mr. Kinder's management, Ms. Chamorro was constructively discharged from her job.

61. After the incident on September 11, 2022, Ms. Chamorro's parents attempted to call the phone number provided for Boston Market's human resources department. However, those calls only went to voicemail, and no representative from Boston Market followed up.

62. On January 10, 2023, Ms. Chamorro, through counsel, sent correspondence to Defendant Boston Market requesting a copy of the relevant surveillance video. Boston Market did not respond.

63. On or about January 23, 2023, Ms. Chamorro filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission (EEOC).

64. On April 30, 2025, the EEOC issued a determination that "there is reasonable cause to believe [Boston Market] discriminated against a class of individuals, including the Charging Party, because of their sex, female, by subjecting them to sexual harassment and constructively discharging them, in violation of Title VII."

65. On May 22, 2025, the EEOC issued a Notice of Right to Sue letter to Ms. Chamorro, authorizing her to proceed with this civil action.

## CLAIM 1
## Sex Discrimination (Hostile Work Environment) under Title VII
## Against Defendant Boston Market

66. Plaintiff Chamorro re-alleges and incorporates all allegations above.

67. Under Title VII of the Civil Rights Act of 1964, it is unlawful for an employer to require employees to work in a discriminatorily hostile or abusive environment.

68. During her employment at Defendant Boston Market, Plaintiff Chamorro was subjected to unwelcome harassment based on sex by her manager, Defendant Matthew Kinder.

69. The harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

70. Defendant Boston Market knew or should have known about the harassment, and it failed to take reasonable corrective action.

71. Defendant Matthew Kinder himself subjected Ms. Chamorro to unwelcome sexual harassment, including by making suggestive comments, standing unnecessarily close to her, grabbing his crotch while looking at a female co-worker, and intentionally touching Ms. Chamorro's buttocks.

72. As a direct and proximate result of Defendant Boston Market's hostile work environment, Plaintiff Chamorro has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of wages and benefits, and other terms, privileges, and conditions of employment.

73. Defendants have acted with malice and reckless indifference to Plaintiff Chamorro's federally protected right to be free from sex discrimination in employment.

74. Plaintiff Chamorro is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

75. Defendant Boston Market's acts are worthy of substantial sanction to punish and deter it and other employers from engaging in this type of unlawful conduct.

## CLAIM 2
### Sex Discrimination (Hostile Work Environment) under Ohio Rev. Code § 4112.052
### Against Defendant Boston Market

76. Plaintiff Chamorro re-alleges and incorporates all allegations above.

77. Under Ohio Rev. Code § 4112.02(A), it is unlawful for an employer to require employees to work in a discriminatorily hostile or abusive environment.

78. Under Ohio Rev. Code § 4112.052(A), whomever violates section 4112.02(A) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

79. During her employment at Defendant Boston Market, Plaintiff Chamorro was subjected to unwelcome harassment based on sex, including by her manager Defendant Matthew Kinder.

80. The harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment.

81. Defendant Boston Market knew or should have known about the harassment, and it failed to take reasonable corrective action.

82. Defendant Matthew Kinder himself subjected Ms. Chamorro to unwelcome sexual harassment, including by making suggestive comments, standing unreasonably close to her, grabbing his crotch while looking at a female co-worker, and intentionally grabbing Ms. Chamorro's buttocks.

83. As a direct and proximate result of Defendant Boston Market's hostile work environment, Chamorro has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of wages and benefits, and other terms, privileges, and conditions of employment.

84. Defendants acted with actual malice toward Ms. Chamorro.

85. Plaintiff Chamorro is entitled to punitive damages and attorneys' fees based on Defendant's conduct.

## CLAIM 3
### Aiding and Abetting Unlawful Discrimination under Ohio Rev. Code § 4112.052
### Against all Defendants

86. Plaintiff Chamorro re-alleges and incorporates all allegations above.

87. Under Ohio Rev. Code § 4112.02(J), it is an unlawful employment practice for any person to aid, abet, incite, compel, or coerce the doing of any unlawful discriminatory practice.

88. Under Ohio Rev. Code § 4112.052(A), whomever violates section 4112.02(J) is subject to a civil action for damages, injunctive relief, and any other appropriate relief.

89. Defendants Matthew Kinder and Alex Sanders aided, abetted, incited, compelled, or coerced the unlawful discriminatory practices against Plaintiff Chamorro alleged above.

90. Defendant Boston Market is vicariously liable for its employees' acts toward Ms. Chamorro, including those of the individual defendants.

91. As a direct and proximate result of Defendants' actions, Chamorro has suffered and will continue to suffer economic and non-economic damages for which Defendants are liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of wages and benefits, and other terms, privileges, and conditions of employment.

92. Defendants acted with actual malice toward Ms. Chamorro.

93. Plaintiff Chamorro is entitled to punitive damages and attorneys' fees based on Defendants' conduct.

## CLAIM 4
### Civil Liability for Criminal Acts (Sexual Battery) under Ohio Rev. Code § 2307.60
### Against Defendant Kinder

94. Plaintiff Chamorro re-alleges and incorporates all allegations above.

95. Under Ohio Rev. Code § 2307.60(A), anyone injured in person or property by a criminal act has, and may recover full damages in, a civil action unless specifically excepted by law.

96. Under Ohio Rev. Code § 2907.03(A)(9), a person commits the criminal act of sexual battery when he or she engages in sexual activity with a minor over whom they have "temporary or occasional disciplinary control."

97. "Sexual activity" includes "any touching of an erogenous zone of another, including without limitation the thigh, genitals, buttock, or pubic region." Ohio Rev. Code § 2907.01(A), (C).

98. On September 11, 2022, Defendant Kinder committed sexual battery against Plaintiff Chamorro, then a minor, when he touched and swiped his hand against her buttocks.

99. At the time of the incident, Defendant Kinder was Plaintiff Chamorro's supervisor and thus had disciplinary control over her in connection with her employment.

100. As a direct and proximate result of Defendant Kinder's actions, Plaintiff Chamorro has suffered and will continue to suffer economic and non-economic damages for which Defendant is liable, including, but not limited to, pain and suffering, emotional distress, inconvenience, the loss of wages and benefits, and other terms, privileges, and conditions of employment.

101. Defendant Kinder acted with actual malice toward Ms. Chamorro.

102. Plaintiff Chamorro is entitled to punitive damages and attorneys' fees based on Defendant Kinder's conduct.

## JURY DEMAND

Plaintiff Chamorro demands a trial by jury for all claims so triable.

## PRAYER FOR RELIEF

Plaintiff Yazmin Chamorro therefore requests that the Court render judgment in her favor on all claims against Defendants and grant the following relief:

    a.    Award Plaintiff full compensatory damages in an amount to be determined at trial;

    b.    Award Plaintiff punitive damages in an amount to be determined at trial;

    c.    Award Plaintiff pre-judgment and post-judgment interest on all monetary awards;

    d.    Award Plaintiff reasonable attorneys' fees and all other costs incurred for this action; and

    e.    Grant such other relief in law or equity that this Court deems just and equitable.

Dated: August 15, 2025                      Respectfully submitted,

*/s/ Patrick Haney*
Patrick C. Haney (Ohio Bar No. 0092333)
  Phone: (216) 861-5617
  Email: Patrick.Haney@lasclev.org
Barbara R. Barreno-Paschall (Ohio Bar No. 0104107)
  Phone: (216) 297-7961
  Email: bbarreno-paschall@lasclev.org
THE LEGAL AID SOCIETY OF CLEVELAND
1223 W. 6th Street
Cleveland, Ohio 44113
Fax: (216) 861-0704

*Attorneys for Plaintiff Yazmin Chamorro*